# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:                                    ) Case Number: 09-04778-FLK
                                          )
Julianne Arnoux,                          ) Chapter:     7
                                          )
                                          )
                                          )
                                          )
            Debtor.                       ) MEMORANDUM DECISION
                                          )

This matter is before the court on the motion for partial summary judgment filed by the United States Trustee ("Trustee") to dismiss for abuse debtor Julianne Arnoux's petition for chapter 7 relief. The Trustee's motion asks this court to declare that the income listed on the debtor's Official Form B22A ("B22A") is incorrect and to order her to enter a different amount, which would make her an above median income debtor for means test purposes. The sole issue is whether the definition of "current monthly income" contained in the Bankruptcy Code encompasses income which was derived from the debtor's work during the statutory six month period but which was not received during that period. The court concludes the definition of "current monthly income" requires that the income be both received and derived during the statutory six month period. For that reason, the Trustee's motion for partial summary judgment is denied.

## FACTS

Julianne Arnoux filed her petition for relief under chapter 7 of Title 11 on August 25, 2009. She is a member of a four person household and she resides in Washington state. For

means test purposes, the applicable median income for a four person household is $82,445.00. On B22A, Ms. Arnoux stated that the annualized current monthly income for her four person household is $81,471.60. Because that amount was less than the applicable median income, she indicated that the "Presumption of Abuse" did not arise in her case and she did not fill out the expense portion of B22A.

Current monthly income is calculated by averaging the monthly income a debtor receives from all sources, derived during the six month period preceding the month in which the chapter 7 case was filed. In Ms. Arnoux's case, the income sources are the salaries that she and her fiancé receive and the six month period is February through July, 2009. As calculated by Ms. Arnoux, her average monthly income was $3,932.80 and her fiancé's average monthly income was $2,856.50.

The Trustee disagrees with Ms. Arnoux's calculations. He asserts Ms. Arnoux's average monthly income for the period is $4,165.29, increasing her household annualized current monthly income to $84,261.48, an amount that exceeds the applicable median income for a four person household. According to the Trustee, she is required to complete the expense portion of B22A, to determine if the presumption of abuse arises in her case.

The crux of the disagreement between the Trustee and the debtor is whether a pay period that falls outside the six month period but which includes wages derived from that period should be included in Ms. Arnoux's calculation of her average monthly income. Ms. Arnoux is paid every two weeks and she received 22 weeks of pay during the six month period preceding the month in which she filed her chapter 7 petition. While her calculation of average monthly income includes all of the income she actually received during the applicable six month period,

09-04778-FLK7    Doc 31    Filed 08/13/10    Entered 08/13/10 16:45:06    Pg 2 of 13

her calculation does not include income earned during the six month period that she received in a paycheck that she received outside the period.

## DISCUSSION

Summary Judgment

The Trustee has moved for partial summary judgment in his favor. Bankruptcy Rule 7056 makes Rule 56 of the Federal Rules of Civil Procedure applicable in adversary proceedings. Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings... together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, the material facts are not disputed. The matter before the court is an issue of law, the interpretation of a statute.

Means Test

Section 707(b)(1) authorizes the court to dismiss or convert a chapter 7 case filed by an individual whose debts are primarily consumer debts if the court "finds the granting of relief would be an abuse" of the bankruptcy system. Statutory directions for the exercise of this authority is provided in subsections (2) and (3) of § 707(b). Subsection (3) states that a case may be found to be an "abuse" if "the debtor filed the petition in bad faith" or based upon "the totality of the circumstances... of the debtor's financial situation." § 707(b)(3). Subsection (2), at issue here, is commonly referred to as the "means test" and it employs a less subjective test to determine whether a presumption of abuse arises under §707(b). § 707(b)(3).

The means test is a statutory formula that operates as a screening mechanism to decide when a presumption of abuse arises in a bankruptcy case. Under the means test, the debtor's

09-04778-FLK7    Doc 31    Filed 08/13/10    Entered 08/13/10 16:45:06    Pg 3 of 13

current monthly income initially is used to determine whether a presumption of abuse arises. If the debtor's current monthly income is less than the states's median income for a household of the same size then the presumption of abuse does not arise. On the other hand, if the debtor's current monthly income is greater than the state's median income for a household of the same size, then the debtor must compute the expense deductions detailed in § 707(b)(2)(A)(ii)-(iv) to calculate the debtor's monthly disposable income. If the amount of monthly disposable income, multiplied by 60, is greater than $10,950.00, then the debtor fails the means test. If the amount is less than $6,575.00, then the debtor passes the means test. If the amount falls between those two numbers, the debtor fails the means test only if the amount is greater than 25% of the debtor's non-priority unsecured claims. Finally, if the debtor fails the means test, the court presumes abuse exists and the case must either be dismissed or converted to a case under chapter 13, absent special circumstances.

The Parties' Contentions

The term "current monthly income" is defined at § 101(10A) to mean:

> The average monthly income from all sources that the debtor **receives** (or in a joint case the debtor and the debtor's spouse receives) without regard to whether such income is taxable income, **derived** during the six month period. 11 U.S.C. § 101(10A). (Emphasis added)

Ms. Arnoux contends that the statute requires that "current monthly income" must be both received and derived during the six month period. For that reason, she argues her final pay period is excluded from the computation because she did not actually receive that income during the applicable six month period.

In response, the Trustee asserts that the limiting phrase "during the six month period"

-4-

relates only to "derived," the word that precedes it and not to the word "receives," which occurs earlier in the sentence. In the Trustee's view, the language of the statute is plain: "the more natural and complete reading of this sentence is that it imposes two conditions before income may be included; (1) that the income be received by the debtor, and (2) that the income be 'derived' by the debtor during the six month period." As the statute is applied by the Trustee, the income earned by Ms. Arnoux during the final two weeks of the six month period needs to be included in her means test calculations.

### Statutory interpretation

"The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." The United States v. Daas, 198 F.3d 1167, 1174 (9th Cir. 1999). In construing the provisions of the statute, the court first looks to the language of the statute to determine whether it has a plain meaning. McDonald v. Sun Oil Co., 548 F.3d 774, 780 (9th Cir. 2008). If the relevant language is plain and unambiguous, the court's task is complete. United States v. Carter, 421 F.3d 909, 911 (9th Cir. 2005). "The starting point for all statutory interpretation is the presumption that Congress intended the accepted and plain meanings of the words used." In re Las Vegas Monorail Co., 429 B.R. 770, 775 (Bankr. D.NV. 2010). If the interpretation of the statutory language is not clear from the plain meanings of the words used, words of a statute must be read in their context and with a view to their place in the overall statutory scheme, with appropriate consideration of the legislative history. Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).

### Bankruptcy Cases

While there are a few bankruptcy cases that consider the meaning of § 101(10A), there is

09-04778-FLK7    Doc 31    Filed 08/13/10    Entered 08/13/10 16:45:06    Pg 5 of 13

no case directly on point. In the case before the court, the issue is whether income derived from the statutory six month period is included in the means test calculations, if the income is not received during that period. There are two helpful cases but they deal with a slightly different problem: whether income received during the statutory six month period is included in the means test if the income is derived from work outside the period. Both cases decide that the term "average monthly income" as defined in § 101(10A) is ambiguous and both cases assume that the statute requires that the income be received during the statutory six month period. The cases are In re Meade, 420 B.R. 291 (Bankr. W.D. Va., 2009), and In re Burrell, 399 B.R. 620, 622 (Bankr. C.D. Ill., 2008).

In Meade, the Trustee and debtors disagreed about whether the husband's annual $9,000.00 bonus should be included in the means test calculations. The bonus was received during the six month period that preceded the petition date but it was derived from the debtors' work over the entire year. Meade at 304. Asserting that under the plain language of the statute the entire amount of any income received by the debtors during the six months preceding the filing must be included, the Trustee argued for the inclusion of the entire amount in the means test calculations. Id. The debtors disagreed, emphasizing that only one half of the husband's bonus income was derived from his work during the applicable period. Id. at 305.

In its analysis, the Meade court discerned an ambiguity created by Congress' use of both "receives" and "derived" in defining current monthly income. According to the court, the term "average monthly income" is susceptible of two interpretations. Id. Under one interpretation, the debtor's average monthly income would be calculated by dividing by six all of the income received by the debtor within the statutory six month period. The second interpretation is that the

09-04778-FLK7    Doc 31    Filed 08/13/10    Entered 08/13/10 16:45:06    Pg 6 of 13

use of both "receives" and "derived" means that Congress intended for there to be some connection between the compensation received and the period in time in which the applicable services for such compensation were rendered. Under this interpretation of the statute, the amount of the annual bonus would be pro rated over the twelve month term. Id. The court adopted the latter interpretation, which the court characterized as the debtor's "common sense" position, but in doing so denied that the court was substituting its judgment for Congressional intent. Rather, emphasizing the legislative policies behind the means test, the court reasoned that its pragmatic approach was consistent with the overall purpose of the statute. Id.

The Trustee cites <u>Meade</u> as authority for the argument that the statutory six month limitation relates only to "derived" and not to "receives." <u>Meade</u> does not totally support the Trustee's position. While the court's disposition of the husband's income may support the Trustee's position, what the court did with Mrs. Meade's income does not. Mrs. Meade worked as a public school teacher and she was paid for her services over a period of ten months. Based upon its treatment of Mr. Meade's bonus income, the court considered whether for means test purposes it should fairly allocate her income over twelve months, as opposed to including all of the income that she received during the six months that preceded the petition date. Rejecting the allocation approach, the court reasoned "that this type of situation is well within the framework provided by Congress of looking to the income actually received during the six month period prior to the bankruptcy as the best measure of a debtor's ability to pay creditors." <u>Meade</u> at 307. Accordingly the court held Mrs. Meade's income for means test purposes was all of the income she actually received during the six month period preceding her bankruptcy. Id. Meade is not authority for the proposition that the statutory six month limitation relates only to "derived" and

not to "receives."

Section 101(10A) affects chapter 13 cases because current monthly income is the baseline for projected disposable income, which determines the amount that unsecured creditors must be paid, and because it determines the duration of a chapter 13 plan. 11 U.S.C. § 1325(b). In Burrell, the debtors proposed a chapter 13 plan with a three year commitment period. The Trustee objected to confirmation of the plan, asserting that the debtors must file a plan with a five year commitment period because the debtors were above median income debtors. Burrell, 399 B.R. at 622. As in Meade, the dispute was whether income received but not earned during the six month statutory period should be included in the means test calculations. In Burrell, the debtors argued that "current monthly income" must not only be received during the statutory six month period, but it must be also derived from work performed during that period. Burrell at 624. They maintained that "derived" as used in the statute is a limiting term describing the income's origin and requiring that the work related to the income occur in the six month period. Id. In contrast to the Trustee's position here, the Trustee's position in Burrell was that the terms "receives" and "derived," are synonymous and consequently means test calculations are to be made on a cash basis, meaning that income is included when it is received, not when it is earned.

Characterizing the grammatical structure of § 101(10A) as "befuddling," the Burrell court concluded that the statute was ambiguous. Id. at 627. Accordingly the court looked to the legislative history of the statute for assistance in its interpretation and from that history, the court discovered that Congress had not intended to create additional criteria for current monthly income beyond the receipt of that income during the applicable time period. Id. Instead, the court reasoned, the conflict between "receives" and "derived" was simply the result of inartful

09-04778-FLK7    Doc 31    Filed 08/13/10    Entered 08/13/10 16:45:06    Pg 8 of 13

drafting. In the court's view, the use of the term "derived" was mere surplusage to the earlier term "receives," that did not add an additional requirement that the income must be earned over the statutory six month period. Id.

Without question Burrell is a carefully reasoned opinion that applies rules of construction in a principled way. The court, however, disagrees with Burrell's ultimate conclusion that "derived" means "receives." This construction of the statute does not comport with the canon of statutory construction that states that if different language is used in the same connection in different parts of the statute the court presumes that the legislature intended a different meaning and effect. Russello v. United States, 464 U.S. 16, 23 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Moreover, while the Burrell court is correct that "derived" can mean "receives," the two words usually do not have identical meanings and § 101(10A) can be read so that the two words have distinct meanings. In his treatise on chapter 13, Judge Lundin states:

> What does "derived" add to the meaning of income in § 101(10A)(A)? Income from all sources is counted if received by the debtor, but that income must also be derived during the six month period. Literally, the word means "to trace to or from a source." If the debtor received income during the six month period based on a transaction or event outside the six month period, it might be argued that the income was not derived during the six month period.

Keith M. Lundin, Chapter 13 Bankruptcy, 3d.Ed. 468-12 (2000 & Supp. 2007-1). (Quoting Webster's New 20th Century Dictionary 491 (2d ed. 1983)). This is also the conclusion reached by the Meade court. Meade, 420 B.R. at 306-7.

## COURT'S DECISION

Is the language of 101(10A) plain or ambiguous? If plain, the court's role is limited to enforcing the statute according to its terms. If ambiguous, the court may look beyond the words

09-04778-FLK7    Doc 31    Filed 08/13/10    Entered 08/13/10 16:45:06    Pg 9 of 13

of the statute for assistance in determining the legislative intent. The Trustee's argument that the language is plain focuses on one part of the definition and the relative proximity between the words "receives" and "derived" and the phrase "during the six month period..." This approach violates a canon of statutory interpretation that the court should not be guided by a single part of the statute but should look at the statute as a whole. Azarte v. Ashcroft, 394 F.3d 1278, 1287 (9th Cir. 2005) citing Kokoszka v. Belford, 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). Moreover if the non-relevant parenthetical clauses that separate "receives" and "derived" are removed, the two words are separated by only a solitary coma. The significance of the coma appears to be the drafter's attempt to provide a modicum of structure for the clumsily written sentence.

There is another reason to believes the statute is ambiguous. In the case before the court, the position of the Trustee is that income derived but not received during the statutory six month period is included in the means test calculations. This position is based upon the plain meaning of the statute whereby the six month limitation applies only to the word "derived" and not to the word "receives." By contrast, the position of the Trustee in Meade was that income received during the six month period but derived from work outside the period was included in the means test calculations. Meade 420 B.R. at 304-5. Again, this position was based upon "the plain language of the statute the entire amount of any income received by the debtor during the six months preceding filing must be included." Id. at 304. Finally, the position of the Trustee in Burrell was "that the terms 'receives' and 'derived' are synonymous as used in § 101(10A) and that it is inferential that B22A calculations are to be made on a cash basis..." Burrell, 399 B.R. at 624. This position, which was adopted by the court, probably was not based upon the plain

09-04778-FLK7    Doc 31    Filed 08/13/10    Entered 08/13/10 16:45:06    Pg 10 of 13

meaning of the statute.

Arguably the problem with § 101(10A) is that the reader is provided a coma without the additional language that would clarify the relationship between "receives," "derived," and "during the six month period." For example, the injection of the word "or" would make the relationship "income from all sources that the debtor receives or derived during the six month period." Alternatively injecting the word "and" would make the relationship "income from all sources that the debtor receives and derived during the six month period." Undoubtly there are other variations that would assist the reader, including a variation that would establish the construction urged by the Trustee. In interpreting a statute, however, courts are cautioned against assisting the legislature by supplying words that the court believes are missing from the statute. Lamie v. U.S. Trustee, 540 U.S. 526, 537, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

In conformity with other courts that have considered the issue, the court concludes that the term "current monthly income" as defined in § 101(10A) is ambiguous. Next the court will address whether statutory policy considerations support either of the parties' positions. As part of a policy argument, the Trustee diplomatically states "the purpose of the means test is to help the courts determine who can and who cannot repay their debts." Blausey v. U.S. Trustee, 552 F.3d 1124, 1133 (9th Cir. 2009); In re Ransom, 577 F.3d 1026, 1031 (9th Cir. 2009). More realistically, the drafters of the means test intended to limit the discretion previously exercised by bankruptcy judges by creating a deterministic formula for presuming abuse in chapter 7 cases. Congress implemented this policy by mandating that debtors provide information regarding their financial condition and history and prepare means test calculations to determine whether their cases were abusive. In re Hartwick, 359 B.R. 16, 21 (Bankr. D.N.H. 2007). Culhane and White,

-11-

"Catching Can-Pay Debtors: Is the Means Test the Only Way?" 13 Am. Bankr. Inst. L.Rev. 665, 676 (2005). Congress undoubtly intended that the means test would make the treatment of debtors more uniform and, perhaps, generate additional monies for creditors.

The court concludes that statutory policy considerations do not favor either parties' position. The Trustee argues that the rejection of his construction of the statute could produce untoward means test results that would harm either the debtor or creditor, depending on the circumstances. Of course, the Trustee is correct. A mechanistic system based upon historical data and an arbitrary period of time can and will produce unfair results. The statutory formula is designed to encourage pre-bankruptcy planning. No matter how the court interprets the statute, the problem will remain because it is inherent in the statute.

The court's final step is an examination of the legislative history. What little legislative history exists is set forth in Burrell, 399 B.R. at 627. The legislative history makes reference only to when income is received and not to when income is earned. The word "derived" is not used in the legislative history. It is clear from the history that as the formula for establishing "average monthly income" the legislative drafters focused on the statutory six month period and the receipt of income during that period. From this history, the Burrell court concluded "that the 'derived during' phrase found its way into the statutory language simply as a result of poor sentence construction and inartful drafting." Id.

As previously stated, this court agrees with Burrell's characterization of the draftsmanship but disagrees with its conclusion that the word "derived" should be read out of the statute. Based upon the legislative history, the court concludes the legislative drafters intended the phrase "during the six month period" to relate to both "receives" and "derived." In that

09-04778-FLK7    Doc 31    Filed 08/13/10    Entered 08/13/10 16:45:06    Pg 12 of 13

legislative history, the drafters specifically state "[T]he average monthly income from all sources that the debtor receives...in the six month period preceding the bankruptcy filing..." H.R. Rep. 109-31 (I), 109th Cong., 1 St. Sess. 2005, U.S.C.C.A.N. 88, 99 N. 60. Elsewhere, the same drafters state: "Section 102(b) of the Act amends § 101 of the Bankruptcy Code to define "current monthly income" as the average monthly income that the debtor receives...in a specified six month period preceding the filing of the bankruptcy case." Id. at 122. Unquestionably the drafters of this legislative history believe that the definition of average monthly income was based upon the income actually recieved by the debtor during the six months preceding the petition date.

In conclusion the court decides the definition of "current monthly income" requires that the income be both "received" and "derived" during the statutory six month period. For that reason the court holds that Ms. Arnoux's income which was derived from her work during the six months preceding the petition date is not "current monthly income." Consequently the court will not order Ms. Arnoux to correct B22A. The Trustee's motion for partial summary judgment is denied.

Done this 13th day of August, 2010

_____
FRANK L. KURTZ
BANKRUPTCY JUDGE